IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-HC-2117-D

BORIS MURPHY,

    Petitioner,

v.

LESLIE COOLEY-DISMUKES and
ACTING WARDEN QUEEN,

    Respondents.

**ORDER**

On June 17, 2024, Boris Murphy ("Murphy" or "petitioner"), proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 [D.E. 1]. On July 25, 2024, Murphy filed a corrected petition [D.E. 7]. On November 14, 2024, the court reviewed the corrected petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and allowed the petition to proceed [D.E. 8]. On March 14, 2025, respondents answered the petition [D.E. 20], moved to dismiss the petition as time-barred [D.E. 21] and filed a memorandum in support and several exhibits [D.E. 22]. On the same date, the court notified Murphy about respondents' motion to dismiss, the response deadline, and the consequences of failing to respond [D.E. 23]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On April 17, 2025, Murphy responded in opposition [D.E. 27–30]. As explained below, the court grants respondents' motion to dismiss the petition.

I.

On December 22, 1998, in Beaufort County Superior Court, Murphy pleaded guilty to one count of second-degree murder, one count of assault with a deadly weapon with intent to kill

inflicting serious bodily injury, and two counts of armed robbery. See [D.E. 22-2] 2–5; [D.E. 22-3] 2–3. On December 29, 1998, the court sentenced Murphy to 313 to 385 months' imprisonment for his second-degree murder conviction to begin at the expiration of "FEDERAL SENTENCE 4:97CR0020-002 10/19/98." [D.E. 22-4] 2.[1] The court also sentenced Murphy to consecutive sentences of 167 to 210 months' imprisonment for his assault conviction and 146 to 185 months' imprisonment as to each of his robbery convictions. See [D.E. 22-5] 2; [D.E. 22-6] 2; [D.E. 22-7] 2. Murphy did not appeal. See [D.E. 7] 1–3.

On March 17, 2003, Murphy moved for preparation of a stenographic transcript of his plea hearing in Beaufort County Superior Court, which the court denied on April 21, 2003. See [D.E. 22-15] 2–4; [D.E. 22-16] 2. On May 8, 2003, Murphy filed a writ of mandamus in Beaufort County Superior Court concerning the denial of his motion for preparation of a stenographic transcript. See [D.E. 22-17] 2–4. On May 21, 2003, an official court reporter informed Murphy that she would provide a copy of his plea hearing upon receipt of payment. See [D.E. 22-18] 2.

---

[1] In 1998, in the United States District Court for the Eastern District of North Carolina, Murphy pleaded guilty to conspiracy (count 1), interference with commerce by threats or violence (Hobbs Act robbery) and aiding and abetting (count 2), theft of firearms from a federal firearms licensee and aiding and abetting (count 3), use of a firearm during a crime of violence (robbery) and aiding and abetting (counts 4 and 12), felon in possession of a firearm and aiding and abetting (count 6), conspiracy to possess with intent to deliver crack cocaine (count 8), and possession with intent to distribute cocaine base (crack) and aiding and abetting (count 11). See Judgment at 1–2, United States v. Murphy, No. 4:97-CR-20 (E.D.N.C. Oct. 21, 1998), [D.E. 83]. The court sentenced Murphy to life imprisonment plus 60 months' consecutive imprisonment on count 4 and 240 months consecutive on count 12. See id. at 4. On October 4, 2021, the court reduced Murphy's sentence to "240 months on Count 8 to run concurrently with the terms in Counts 1, 2, 3, and 6; to 180 months on Count 11 to run consecutively to the terms in Counts 1, 2, 3, 6, and 8; and to 60 months on Count 12 to run consecutively to all other counts, resulting in a total term of 540 months." United States v. Murphy, No. 4:97-CR-20, 2021 WL 4527241, at *4 (E.D.N.C. Oct. 4, 2021) (unpublished). Murphy is housed at the United States Penitentiary in Atwater, California. See BOP Inmate Locator, https://www.bop.gov/inmateloc (search by inmate name) (last visited Feb. 3, 2026). Murphy's projected release date from federal custody is March 5, 2036. See id.

2

On January 18, 2005, Murphy filed a motion for appropriate relief ("MAR") in Beaufort County Superior Court, which the court denied on February 10, 2005. See [D.E. 22-19] 2–80; [D.E. 22-20] 2.

On November 4, 2011, North Carolina Prisoner Legal Services, Inc. ("NCPLS") requested a copy of Murphy's plea transcript and other filings, which the Beaufort County Clerk of Court provided on December 23, 2011. See [D.E. 22-21] 2. On February 21, 2012, Murphy filed a letter requesting copies of his court files. See [D.E. 22-22] 2. On May 10, 2012, the Beaufort County Clerk of Court responded that copies were provided to NCPLS. See [D.E. 22-23] 2.

On April 22, 2021, Murphy moved for copy of clerk's record and proceedings in Beaufort County Superior Court. See [D.E. 22-24] 2–4. On May 10, 2021, the Beaufort County Clerk of Court sent Murphy copies of his court files. See [D.E. 22-25] 2. On May 12, 2021, the court granted Murphy's motion for discovery, ordered the clerk to send Murphy copies of his court files, and found stenographic transcripts of pretrial proceedings could not be provided to Murphy because they did not exist. See [D.E. 7-2] 6–7.

On June 23, 2021, Murphy filed a petition for permission to file a successive MAR in Beaufort County Superior Court, which the court granted on December 9, 2021. See [D.E. 22-26] 2–4; [D.E. 22-27] 2–3. On February 25, 2022, Murphy filed a successive MAR in Beaufort County Superior Court, which the court denied on June 3, 2022. See [D.E. 22-28] 38–120; [D.E. 22-29] 2–4. On July 18, 2022, Murphy filed a motion to alter or amend judgment concerning the denial of his successive MAR, which the court denied on August 19, 2022. See [D.E. 22-30] 2–7; [D.E. 22-31] 2. On October 4, 2022, Murphy petitioned for a writ of certiorari in the North Carolina Court of Appeals, which the court denied on December 7, 2022. See [D.E. 22-28] 2–120; [D.E. 22-32] 2.

3

In his habeas petition, Murphy makes four claims: (1) he received ineffective assistance of counsel because his trial attorney forged his signature on an agreement for truthful testimony; (2) his guilty plea was involuntary and unknowingly made in violation of his due process and speedy trial rights; (3) there was prosecutorial misconduct and his right to a fair and public trial was violated; and (4) there was a double jeopardy violation because he was indicted on two robbery charges. See [D.E. 7] 5–11; [D.E. 7-1] 1–13. Murphy asks the court to "vacate and remand and give [him] an opportunity to plea guilty only to second degree murder (20 yrs) ran concurrent to his federal life sentence of 1998." [D.E. 7] 16.

II.

A motion to dismiss under Rule 12(b)(6) tests the petition's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a petition "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation and citation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302; accord Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a petition's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a petitioner's factual allegations must "nudge[] [his] claims,"

4

Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the petition and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the [petition] and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Respondents argue the petition is untimely. See [D.E. 22] 9–22. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires that a person in custody under a state court judgment petition for a writ of habeas corpus within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

5

The one-year limitation period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557, 560 (4th Cir. 1999). An application for post-conviction or other collateral review is pending from initial filing in state court until final disposition in the highest state court. See Taylor, 186 F.3d at 560–61. The time, however, between when a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief counts against the one-year limitation period. See, e.g., Holland v. Florida, 560 U.S. 631, 635–38 (2010); Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). Once the state's highest court resolves the state post-conviction proceedings, the limitation period resumes. See, e.g., Holland, 560 U.S. at 635–36, 638; Hernandez, 225 F.3d at 438; Harris, 209 F.3d at 327–28.

The court must determine when Murphy's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). Because Murphy did not appeal his conviction to the North Carolina Court of Appeals, it became final no later than January 5, 1999, when the 14-day time period to serve notice of appeal expired. See N.C. R. App. P. 4(a)(2) (providing that notice of appeal may be filed within 14 days of judgment); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012). The statutory period then began to run on that date, and it ran for 365 days until it expired on January 5, 2000. See, e.g., Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Murphy's other post-conviction filings did not reopen his time for filing a habeas petition. See id. Accordingly, absent equitable tolling, Murphy's petition is untimely.

Equitable tolling applies to the AEDPA's one-year statute of limitations only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quotation

6

and citation omitted); see Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008). Equitable tolling under section 2244 is limited to "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotations and citation omitted); see Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir. 2011). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330; cf. Wolfe v. Dotson, 144 F.4th 218, 231 (4th Cir. 2025).

Murphy argues the merits of his petition warrant review. See [D.E. 7] 13–15; [D.E. 7-1] 9–13; [D.E. 27] 1–10; [D.E. 28] 1–4; [D.E. 29] 1–2. But "the merits of the underlying claim are not part of the equitable tolling analysis." Rouse v. Lee, 339 F.3d 238, 253 n.17 (4th Cir. 2003) (en banc). Moreover, unfamiliarity with the legal process or lack of representation do not constitute grounds for equitable tolling. See, e.g., United States v. Herrera-Pagoada, 14 F.4th 311, 319 (4th Cir. 2021); United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Harris, 209 F.3d at 330–31.

To the extent Murphy asserts his innocence, a petitioner "does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (citation omitted). "[T]enable actual-innocence gateway pleas are rare . . . ." Id. To present such a claim, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995); see Wolfe, 144 F.4th at 232–33; Finch v. McKoy, 914

7

F.3d 292, 298 (4th Cir. 2019). Murphy does not meet this exacting standard. Additionally, to the extent Murphy argues he did not have copies of his court files or plea transcript, this also does not warrant equitable tolling. See, e.g., Bethea v. Att'y Gen. Pa., No. 18-2859, 2018 WL 7361383, at *1 (3d Cir. Dec. 20, 2018) (unpublished); Lloyd v. VanNatta, 296 F.3d 630, 633–34 (7th Cir. 2002); Huff v. Hooks, No. 5:17-HC-2108, 2018 WL 4289317, at *4 n.4 (E.D.N.C. Sept. 7, 2018) (unpublished). Accordingly, equitable tolling does not apply, and the court dismisses Murphy's petition as untimely.

The court finds that reasonable jurists would not find the court's treatment of Murphy's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court GRANTS respondents' motion to dismiss [D.E. 21], DISMISSES as untimely Murphy's petition for a writ of habeas corpus [D.E. 1, 7], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This 3 day of February, 2026.

JAMES C. DEVER III
United States District Judge